No. 12,798.

LEIGHTON ET AL v. PEOPLE.
(6 P. [2d] 929)

Decided December 21, 1931.

Mr. Lawrence Bothwell, for plaintiffs in error.

Mr. Clarence L. Ireland, Attorney General, Mr. E. J. Plunkett, Assistant, for the people.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

The plaintiffs in error, here called defendants, were informed against and tried for criminal libel. From a verdict of guilty and judgment of conviction they prosecute error.

The charge is, that the defendants did "unlawfully, maliciously and feloniously make, print and publish a certain false, scandalous, malicious and defamatory libel expressed by pictures and photographs of and concerning one Julius Wulfsohn, which said libel is of the tenor, purport and effect as follows: A picture or photograph of the said Julius Wulfsohn in a compromising and indecent position with a nude woman, tending to impeach the honesty, integrity, virtue and reputation of the said Julius Wulfsohn, and thereby to expose him, the said Julius Wulfsohn, to public hatred, contempt and ridicule."

For reasons we assigned in *Leighton v. People,* 87 Colo. 603, 289 Pac. 1118, where a conviction of the defendants upon a charge of aggravated robbery based upon substantially the same facts was reversed, we shall not detail the evidence. It is sufficient to say that

there was no evidence the defendants placed the picture under the rear door of Wulfsohn's store, where he testified he found it, or that they ever published or showed it except to Wulfsohn himself, and to him only on the occasion it was taken. Indeed, the attorney general frankly admits absence of proof of publication as that term is used and understood in its application to civil actions for damages, but contends, nevertheless, that while in such actions publication is essential, in criminal prosecutions, even in the absence of publication, as here, the rule is not absolute and is met if the obvious tendency of the libelous matter be to provoke the prosecutor to break the peace, and is so intended. The authorities support the view of the attorney general that at common law there was a distinction between the proof requirements in a civil action for libel and a criminal proceeding charging libel. In the former, publication was a necessary element in any event, while in the latter, assuming that the libelous matter so portended, the exhibition of it to the prosecutor with intent to provoke a breach of the peace, would support the charge. Newell Slander and Libel (4th Ed.), §833; 17 R. C. L., Libel and Slander, §§56, 225. It was likewise true at common law that the truth could not be shown in defense in a criminal prosecution for libel. Newell, op. cit., §700. In Colorado criminal libel is defined along different lines. By the clear intendment of our statute it is not only necessary that publication be proved, but the truth of the libel may be shown in justification. C. L. 1921, §6830,[1] "The purpose of the legislature in stating its definition was the same as the purpose

[1] "6830. * * * A libel is a malicious defamation· expressed either by printing, or by signs, or pictures or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation, or publish the natural defects of one who is alive, and thereby to expose him or her to public hatred, contempt or ridicule. Every person, whether writer or publisher, convicted of this offense, shall be fined in a sum not exceeding five hundred dollars or imprisoned in the penitentiary not exceeding one year. In all prosecutions for a libel the truth thereof may be given in evidence in justification, except libels tending to blacken the memory of the dead or expose the natural defects of the living."

of Kent and Blackstone and Blount: to stabilize and standardize the meaning of the term 'libel.' '' *Jerald v. Houston,* 124 Kan. 657, 261 Pac. 851. The predicate for the legislation in this state is found in section 10, article 2 of the Constitution.[2]

The prosecution here is based on the statutory definition, and not that of the common law, the charge being that the defendants did ''publish'' the picture, not that they exhibited it to the prosecuting witness, intending thereby to incite him to break the peace. ''The gravamen * * * is * * * the publication.'' *Switzer v. Anthony,* 71 Colo. 291, 206 Pac. 391. Confessedly, and as the record shows, the prosecution failed to establish the charge as laid; and the common law rule, sought to be invoked for such purpose, does not bridge the difficulty. The case of *Yousling v. Dare,* 122 Iowa 539, 98 N. W. 371, cited as announcing a different rule, is distinguishable. The Iowa statutory definition of criminal libel, in addition to language substantially as ours, uses the words, disjunctively placed, ''tending to provoke him to public wrath.''

If we assume that the common law definition of criminal libel has not been changed by statute, and prosecution therefor is maintainable by proof that the alleged libel had been shown only to the prosecuting witness, and was calculated as well as intended to provoke him to break the peace, still the finding must be adverse to the prosecution. For quite as well recognized as the rule itself is its corollary, namely, the indictment must charge that the libel was exhibited to the prosecuting witness with intent so to provoke him. Newell, op. cit., §834; 17 R. C. L. Id., §225; *State v. Syphrett,* 27 S. C. 29, 2 S. E. 624; 2 Bennett and Heard, Leading Criminal Cases (2d Ed.),

---

[2]''10. * * * That no law shall be passed impairing the freedom of speech; that every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and that in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact.''

441; *Hodges v. State,* 24 Tenn. 112 (Cooper 83); *Warnock v. Mitchell,* 43 Fed. 428, 432; *State v. Avery,* 7 Conn. 266. In *Hodges v. State, supra,* there was conviction on a charge and evidence comparable to the record here, and on review the court determined that since the indictment did charge publication and of which the proof failed, but did not "allege that the intention of sending it was to provoke a breach of the peace," all as here, conviction on the latter hypothesis could not be upheld. To the same effect, and as a result of a review of the authorities, is *State v. Syphrett, supra.* There, at pages 35, 36, it is said: "The only contention on the part of the appellant is, that where there has been no publication abroad, as it is termed—that is, to the public generally—or to persons other than the one alleged to have been libelled, then it is necessary that the indictment should contain an allegation that the libel was sent to the party libelled with intent to provoke a breach of the peace. This position seems to be well supported by authority. In 3 Chitty on Criminal Law, 871, it is said: 'Though there be no publication, yet the sending a letter to the party himself, filled with abusive language, is indictable, because it tends to provoke him to a breach of the peace in order to revenge the insult he has received; but then if there be no publication to a third person, the indictment must allege an intention to provoke the prosecutor to a breach of the peace,' citing *Rex v. Wegener,* 2 Stark. 245, which seems to be a leading case on the subject. And again, at page 875, this eminent author says: 'Where there has been no publication of the libel to the third person, or the publication cannot be proved, and the libel has been sent to the prosecutor himself, it is necessary that the indictment should state that the paper was written or sent to the party libelled with the intent to provoke him to a breach of the peace.' "

The statutory crime charged was not proved. Whether the evidence was sufficient to prove the common law crime we need not inquire, for the common law crime was

not charged. It follows, therefore, that the learned trial judge erred in denying the motion for directed acquittals, and the defendants should be discharged.

Judgment reversed.